HERMAN KUES and OTTO KUES, Copartners Doing Business under the Name of KUES BROS. IRON WORKS, Respondents, *v.* FORAN FOUNDRY AND MANUFACTURING COMPANY, Appellant.

First Department, March 5, 1920.

**Sales — suit for reformation and damages for breach of contract — mutual mistake — evidence.**

Plaintiffs sublet to defendant a contract for furnishing cast iron for construction purposes to be made in accordance with details drawn by plaintiffs' engineer to the entire satisfaction of an architect. A controversy arose with respect to furnishing the necessary detail drawings to enable the defendant to manufacture the iron. The plaintiffs after the discontinuance of an action at law in the County Court for the defendant's breach of the contract in failing to furnish and deliver the iron and after the dismissal of their complaint in a like action in the Supreme Court, brought this suit for damages and for a reformation of the contract by substituting the name of the architect for the name of the engineer, both in the plaintiffs' letter and the defendant's acceptance thereof, on the ground of mutual mistake. The plaintiffs' theory that the name of the engineer was inserted in their letter by mistake is supported by testimony of an employee that while writing the letter he was called to the telephone by the engineer and on returning to the typewriter thoughtlessly and absent-mindedly wrote said name in the letter.

*Held,* that there was no evidence of a mutual mistake and that, therefore, there was no ground for the reformation of the contract and the complaint should be dismissed.

Moreover, if the testimony of plaintiffs' employee as to the mistake in writing the letter were accepted as true, it merely shows a mistake on the part of the plaintiffs, of which they did not even notify the defendant.

Evidence of mutual mistake essential to warrant the reformation of a contract must be clear, positive and convincing.

First Department, March, 1920. [Vol. 191.

Appeal by the defendant, Foran Foundry and Manufacturing Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Bronx on the 16th day of August, 1919, upon the decision of the court rendered after a trial at the Bronx Special Term.

*Joseph M. Proskauer* of counsel [*Samuel Bitterman* and *Frank L. Weil* with him on the brief; *Samuel Bitterman*, attorney], for the appellant.

*J. Power Donellan* of counsel, for the respondents.

Laughlin, J.:

The John Kennedy Company took the contract for the erection of a hospital building known as the House of Calvary at Featherbed lane and McCoombs avenue in Bronx county, pursuant to plans and specifications prepared by Robert J. Reilly, an architect, under whose supervision the building was to be constructed. The plaintiffs made an agreement with the John Kennedy Company on the 16th day of October, 1914, whereby they became subcontractors for furnishing, and erecting part of the iron and steel required in the construction work, and they, in turn, sublet to defendant the contract for furnishing the cast iron. The defendant on October 1, 1914, evidently before the plaintiffs took the contract and after preliminary negotiations between the parties, wrote the plaintiff stating that its sales manager had called at the office of the general contractor and ascertained that the cast iron material required in the construction of the hospital would be four cast iron columns for front stoop approximately eleven feet high; twenty-four columns approximately twenty-two feet high; eight pilasters and two cast iron facias; and it offered to furnish and deliver the same for $1,575. On the 18th of October, 1914, the defendant wrote the plaintiffs reducing the price to $1,500 and stated that the reduction was made pursuant to a telephonic communication between the parties and expressed the hope that this would enable the plaintiffs to obtain the contract. They did obtain it that day. On October 27, 1914, the plaintiffs wrote the defendant accepting the

offer to furnish and deliver at the hospital grounds for $1,500 " all the cast iron work as specified below, to be made in accordance with details drawn by Mr. Louis A. Hornum, Engineer, located at 405 Lexington Avenue, N. Y. C., and to the entire satisfaction of the Architect Mr. Robt. J. Reilly, Architect, located at 477 Fifth Ave., N. Y. C., and the owners." The letter specified the terms of payment, and it described the material as follows: "All cast iron columns complete with Corinthian Caps and bases. All pilasters complete. All cast iron facias complete." On November 2, 1914, the defendant wrote plaintiffs acknowledging receipt of the order and stating that for the lump sum price of $1,500 the defendant would deliver at the plaintiffs' shop, at One Hundred and Seventy-fifth street and Carter avenue, the following material: " 4 cast iron columns approximately 11 feet high; 24 cast iron columns approximately 22 feet high; 8 cast iron pilasters; 2 cast iron frames." The letter then continued as follows: " Note we will make this material in strict accordance with the details furnished by Mr. Louis Hornum, Eng., and also to the entire satisfaction and subject to inspection and acceptance, and as per the specifications of Mr. Reilly, Architect, 477 5th Ave." Hornum was an engineer employed by the plaintiffs. None of the material was furnished by the defendant. A controversy arose between the parties with respect to furnishing the necessary detailed drawings to enable the defendant to manufacture the cast iron. The plaintiffs claimed that in October, 1914, they furnished and delivered to defendant copies of three drawings which had been prepared by the architect, and were in existence when the contract was made and that these were sufficient to enable the defendant to do the work. The defendant denied that the plaintiffs furnished it more than a copy of one of the three drawings made by the architect and claimed that its failure to proceed with the work was owing to the fact that it did not receive the necessary details and drawings from Hornum. It was conceded that Hornum caused to be prepared by his son and delivered to the defendant a sketch showing some requirements essential to the manufacture of part of the cast iron that did not appear on any of the drawings by the architect. Faulkner, the sales manager of the defendant,

testified that he made the estimate for the work and that before doing so he only saw the general plans of the architect and that he received verbal information from one of the employees of the general contractor with respect to the details and that these were sufficient to enable him to make the estimate. He further testified that later on he called on the plaintiffs, by request received through the mail, and was informed that they had taken the contract and intended to give the defendant the contract for furnishing the cast iron. He also testified that at the interview plaintiffs' representative, Stein, brought up the question with respect to shop drawings, and stated that the plaintiffs had obtained the services of Louis Hornum, whose address he gave, and that Hornum was going to get up all the shop drawings and he advised the witness to get in touch with Hornum, who he said would have charge of all the iron work on the job. The final letters from the plaintiffs to the defendant, and from the defendant to the plaintiffs, which constitute the contract, were written shortly after this interview. The evidence is undisputed that Hornum never furnished the defendant with any detailed drawings excepting the sketch prepared by his son which only covered part of the material. The evidence is in substantial accord to the effect that the material could not have been manufactured by the defendant from a copy of one of the drawings of the architect which the defendant admitted receiving, and that in addition thereto shop drawings would be required which could not be prepared without further information. The evidence on the part of the defendant was that it did not receive copies of the other two drawings made by the architect until February twenty-sixth when it was busily engaged in the performance of other work, to which penalty clauses for delay were attached, and that it then declined to perform the contract forthwith on the original terms. The evidence is conflicting as to whether the material could have been manufactured from all three of the architect's drawings without shop drawings or further information for the preparation thereof. The plaintiffs concede that they directed Hornum to furnish any information required with respect to the three plans furnished by the architect.

The plaintiffs brought an action at law in the County Court

of Bronx county for the defendant's breach of the contract in failing to furnish and deliver the material. The defendant demurred to the complaint and the plaintiffs discontinued the action. Plaintiffs then brought an action in the Supreme Court for the breach of the contract and the complaint was dismissed on the opening of the case. The plaintiffs then brought this action for a reformation of the contract and for the recovery of damages for the breach thereof. They asked to have the contract reformed by substituting the name of the architect, Reilly, for the name of the engineer, Hornum, both in their letter and the defendant's acceptance thereof, on the ground of mutual mistake; and the contract has been so reformed. Until they brought this action they made no claim that the contract was not properly evidenced by the letters. The theory on which they claim the name of the engineer was inserted in their letter by mistake is presented by the testimony of their employee, Stein, who wrote the letter. He testified that while writing the letter he was called to the telephone by Hornum and that on returning to the typewriter and having Hornum's name in mind from the telephonic conversation, he thoughtlessly and absent-mindedly wrote it in the letter. In support of that contention evidence was given tending to show that the drawings of the architect were sufficient and that at the most they only needed to be supplemented by information from Hornum. It is quite improbable that the witness would have remained absent-minded while writing in not only the name of Hornum but also that he was an engineer, and where he was located, and then writing the name and the address of the architect. But if his testimony were accepted as true, at most, it merely shows a mistake on the part of the plaintiffs *of which they did not even notify* the defendant. The defendant received and accepted the letter as written and in its acceptance undertook to manufacture the material in strict accordance with the details furnished by Hornum, the engineer, and to the satisfaction, and subject to the inspection and acceptance of the architect. The well-settled rule is that the evidence of mutual mistake essential to warrant the reformation of a contract must be " clear, positive and convincing." (*Christopher St. R. R. Co.* v. *23d St. R. Co.*, 149 N. Y. 51.) Here there is no evidence of a mutual

mistake and, therefore, there was no ground for the reformation of the contract. The award of damages was incidental to the equitable relief and otherwise the defendant would have been entitled to a jury trial with respect thereto.

It follows that the findings of fact and conclusions of law inconsistent with these views should be specified in the order and reversed and appropriate findings and conclusions in accordance therewith made and the judgment reversed, with costs, and the complaint dismissed, with costs.

Clarke, P. J., Dowling, Merrell and Philbin, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.